IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kathy and Franklin Kinard and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | C/A No. 2:04-22873-18 |
| vs. ) ) | **ORDER and OPINION** |
| Medical University of South Carolina, ) ) | |
| Defendant. ) ) | |

This court must determine whether an employee benefit plan beneficiary's claim of overbilling by a hospital "relates to" a plan and is therefore preempted under ERISA, 29 U.S.C. § 1144(a). For the reasons stated below, the court finds that ERISA's preemptive tentacles do not encompass plaintiffs' state law claim.

**I.    BACKGROUND**

Plaintiff Kathy Kinard is insured through an employee group health plan. Beginning in November 2001, her minor son plaintiff Franklin Kinard incurred medical bills for treatment provided by defendant Medical University of South Carolina. Plaintiffs contend that these bills did not include discounts which are provided to other insurer's insureds, in violation of S.C. Code Ann. § 38-71-120.[1] On October 8, 2004

---

[1] S.C. Code Ann. § 38-71-120 provides, in relevant part:
Whenever an insurer contracts with a hospital to provide full hospital service and medical care service contracts for its policy owners in the same manner as described in Chapters 13 and 14 of Title 37 of the 1962 Code and arranges with the hospital for payment of claims under procedures described in Chapters 13 and 14 of Title 37 of the 1962 Code, the insurer is entitled to the same discounts allowed to any insurer.

plaintiffs filed a class action suit in state court, alleging a variety of claims premised on violation of § 38-71-120.  Following removal to this court, plaintiffs amended their complaint to seek a declaratory judgment that defendant violated its obligations under § 38-71-120, and requested a permanent injunction against the alleged unlawful billing practice.  Plaintiffs also contend defendant unjustly enriched itself by billing the class members without the discounts.  Plaintiffs seek remand on the basis that the state claim is not preempted.  Alternatively, defendant has filed a motion to dismiss on the grounds that ERISA does preempt the claim.

## II.     DISCUSSION

This district is well acquainted with recent litigation based on § 38-71-120, the "discount statute."  Earlier this year Judges G. Ross Anderson Jr.[2] and Patrick Michael Duffy[3] remanded similar claims premised on the statute.  Both courts rejected ERISA preemption arguments.  This court has the benefit of both judges' reasoning and the parties' analysis of and reaction to those rulings.  As such, the issues in dispute are relatively clear.

The provisions of ERISA "supersede any and all state laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a).  The parties agree that Sonoco Products Co. v. Physicians Health Plan, Inc., 338 F.3d 366 (4th Cir. 2003), provides the

---

[2] Watt v. Spartanburg Reg'l Healthcare Sys., C.A. No. 7:04-22889-13 (D.S.C. Feb. 1, 2005).

[3] Singletary v. Tenet Healthcare Med., Inc., C.A. No. 2:04-22920-23 (D.S.C. March 1, 2005) and Lapaz v. Trident Med. Center, LLC, C.A. No. 04-22948-23 (D.S.C. March 1, 2005).

proper test to determine whether ERISA preempts a state law claim and provides a basis for removal:

> (1) the plaintiff must have standing under [ERISA's civil enforcement provision, §] 502(a) to pursue its claim; (2) its claim must fall[ ] within the scope of an ERISA provision that [it] can enforce via [§] 502(a), and (3) the claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e. an ERISA-governed employee benefit plan.

Sonoco Products, 338 F.3d at 372. (internal quotations omitted).  The court need not address the standing requirement, as the other two elements fall in favor of plaintiffs' position and preclude preemption.  The latter two prongs involve the interplay between the hospital, insurer, and patient.  The hospital-insurer contract determines what amount of the original bill are "eligible charges."  That percentage reflects any discounts the hospital may give to the insurer, and therefore implicates the "discount statute."  The plan dictates what share of those charges is borne by the patient.[4]   Thus, in order to determine the amount that plaintiffs were overbilled (if at all), the proper discount must be applied to the billed charges to arrive at the correct eligible charge.  The parties then must refer to the plan to determine what portion of the eligible charges are plaintiffs' ultimate responsibility.

      Defendant contends that since the plan's terms determine what share of the eligible charges are the patient's responsibility, the plan is implicated.  However, mere implication of an employee benefit plan's provisions does not necessarily bring a state

---

[4] As demonstrated by the bills submitted to the court, the amount paid by the patient is not always tied to the amount of the eligible charge.  However, a greater discount would certainly lower the patient's responsibility for those bills which are tied to the eligible charge.

law claim "within the scope" of ERISA. In the cases cited by defendant, resolution of the state claim required scrutiny of the plan's provisions. In Aetna Health Inc. v. Davila, 124 S. Ct. 2488 (2004), plaintiff contended that his ERISA plan's denial of coverage constituted a breach of the Texas Health Care Liability Act. As Judge Duffy noted, "the defendant's liability under the state statute derived 'entirely from the particular rights and obligations established by the benefit plans.'" Singletary, C.A. No. 04-22920-23 at 9 (quoting Aetna Health, 124 S. Ct. at 2498). Therefore, "interpretation of the terms of the respondents' benefits plans form[ed] an essential part of" their state claim. Aetna Health, 124 S. Ct. at 2498. In Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278 (4th Cir. 2003), plaintiff challenged the validity of the subrogation clause in his plan as inconsistent with Maryland law. The court noted that plaintiff's state claim could not be resolved without determining the validity of certain provisions of his ERISA plan. Singh, 335 F.3d at 291. In the case at bar, the question of whether defendant violated state law can be determined without reference at all to plaintiffs' health care plan. Unlike Aetna Health and Singh, defendant's liability under § 38-71-120 does not hinge on any interpretation of the plan.

Of course, determining the amount that plaintiffs were overbilled (if any) does require applying the plan's terms to the proper charges; however, no provision of the plan itself is in dispute. Plaintiffs do not challenge the decisions of the plan administrator or the validity of the plan's terms. In fact, they seek nothing new of their plan, and request only that the plan's status quo apply to the new charges. This minimal degree of reference stands in contrast to Aetna Health and Singh's examination into the validity of

certain plan decisions or provisions.

The Fourth Circuit recently reiterated that the preemptive scope of ERISA, while broad, is not unlimited. See Gresham v. Lumberman's Mut. Cas. Co., 404 F.3d 253 (4th Cir. 2005). The court considered whether ERISA preempted a breach of contract claim that was based on a document separate and independent from the employer's benefit plan. In considering ERISA's reach, the court noted that "[w]hat triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." Id. at 258. In the case at bar, plaintiffs do not contest the amount of plan benefits (i.e., co-payment amount or co-insurance percentage) or the plan's coverage decisions. In other words, plaintiffs object to defendant's decisions as to the amount of their discounts and the effect of this decision on the amount they are liable for once the plan's co-payment, co-insurance or other payment provisions are applied. This is a matter of simple arithmetic and does not challenge or affect any provision of the plan. For these reasons, the court finds that plaintiffs' claim does not "fall within the scope" of ERISA.

Finally, plaintiffs' claim is capable of resolution without interpretation of the ERISA plan. Interpretation suggests an ascertainment of meaning. Black's Law Dictionary 824 (7th ed. 1999). In order to determine plaintiffs' remedy, the court need not delve into the meaning of their plan; it need only apply the co-payment, co-insurance and other payment provisions.

**III.    CONCLUSION**

Because plaintiffs' claims are not completely preempted pursuant to the test set forth in Sonoco Products, this court lacks subject matter jurisdiction and must remand the matter to state court. It is therefore **ORDERED** that plaintiffs' motion to remand be **GRANTED**. It is further **ORDERED** that defendant's motion to dismiss is rendered **MOOT**.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**

**UNITED STATES DISTRICT JUDGE**

**July 20, 2005**

**Charleston, South Carolina**

6